Johnny **TAYLOR, Jr.,**
**Petitioner-Appellant,**

v.

**Ross MAGGIO, Jr., Warden, Louisiana State Penitentiary, Angola, Louisiana, and Harry Lee, Sheriff, Respondents-Appellees.**

Nos. 84–3108, 84–3141.

United States Court of Appeals,
Fifth Circuit.

Feb. 27, 1984.

James O. Manning, Metairie, La., for amicus curiae James O. Manning.

Frank Sloan, Jefferson, La., for petitioner-appellant in both cases.

William C. Credo, III, Asst. Dist. Atty., Gretna, La., for respondents-appellees in both cases.

Before RUBIN, JOLLY and DAVIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge.

## I.

### A.

David Vogler left his home in Kenner, Louisiana around 8:45 p.m., on February 8, 1980. He told his wife that a black man had called him and requested to see a 1976 Buick the Voglers had displayed for sale in a nearby parking lot. The next morning Mr. Vogler was found, stabbed some twenty times, stuffed in the trunk of his car, where he had been left by his murderer to bleed to death. His car, a 1979 Cadillac, was parked in the lot where the Buick had been. The Buick was missing.[1]

On June 14, 1980, Johnny Taylor, Jr. was stopped for a traffic violation in Millry, Alabama while driving the Buick. While a check of the Buick's registration was being conducted by the Millry police, Taylor fled. His companions, Linda Pugh and Samuel Young, were arrested when the registration check revealed that the Buick had been stolen and its owner murdered.

The next day, detectives Fayard and Congemi of the Kenner police department drove to Millry, Alabama. They interviewed Young and Pugh. They ascertained that the Buick was in fact the one stolen from the Voglers. In the trunk of the Buick they found receipts for body work done at a local garage. The garage owner gave them a copy of a repair estimate he had given Taylor on February 9, 1980, for body work and a paint job.

Taylor was soon arrested, on June 17, 1980, for an unrelated auto theft in Butler, Alabama. Detectives Fayard and Congemi

---

1. The details of the crime and its investigation are set out more fully in the opinion of the Louisiana Supreme Court, *State v. Taylor*, 422 So.2d 109 (La.), *cert. denied*, ___ U.S. ___, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1982).

questioned Taylor there on June 18, 1980. Taylor signed a written statement indicating he had not come into possession of the Buick until March 1980. When the detectives confronted Taylor with their knowledge that he had taken the car to a garage on February 9, 1980, Taylor stated that he had purchased the Buick on that date from Allen Thomas, a white male known to him, and a black man. At trial, Taylor testified that he identified the black man in his oral statement as "Charlie Robertson's brother-in-law." Fayard and Congemi did not recall hearing a name other than Thomas. The detectives did not reduce the second statement to writing because they were convinced that Taylor was lying.

Taylor's fingerprints and palmprints, as well as hair samples, were taken in Alabama and later sent by the Kenner police to the Federal Bureau of Investigation for comparison with latent prints lifted from the Cadillac in which Vogler's body was found. The FBI reported that Taylor's left palmprint matched a partial print found on the trunk lid of the Cadillac. Taylor's hair was also found to be similar to and indistinguishable from hairs found in the visor of the Cadillac. Taylor was indicted on June 28, 1980, and later extradited to Louisiana.

### B.

Taylor was tried for first degree murder in March 1981. He was represented by two experienced attorneys, James Manning and Maurice Bell. Bell, from Alabama, previously had represented Taylor and was retained. Manning was court-appointed. The state relied on Taylor's possession of the Buick almost immediately after its theft and Vogler's murder, Taylor's unsatisfactory explanations of how he came into possession of the Buick, and two pieces of evidence connecting Taylor to the crime

scene: the partial palmprint and the hairs. Taylor testified that he had not even been in the state of Louisiana since 1978, and that his palmprint and hairs could not possibly have been lifted from the victim's Cadillac. Taylor's alibi witnesses, however, were not persuasive, and the jury found him guilty of first degree murder.

During the sentencing phase of Taylor's bifurcated trial, the state relied on evidence previously adduced to show the presence of two "aggravating factors" under the Louisiana death penalty statute.[2] Taylor was engaged in armed robbery when he murdered Vogler, and the murder was committed "in an especially heinous, atrocious, or cruel manner".[3] Taylor's attorney presented no new evidence at the sentencing stage. He began to argue that the unreliability of the evidence against Taylor was a factor which the jury should consider in deciding whether to recommend the death penalty. The trial judge forbade this line of argument because it went to the issue of guilt rather than to the appropriateness of capital punishment. Taylor's attorney made no other argument on Taylor's behalf. The jury recommended that Taylor be sentenced to die, and the trial judge later entered the death sentence.

### II.

### A.

Taylor appealed his conviction and sentence to the Louisiana Supreme Court, which affirmed them both. 422 So.2d 109. On direct appeal, he raised several claims not relevant here. He did, however, argue claims relating to the fingerprint evidence gathered at the crime scene. Taylor's defense at the trial was that his latent palmprint was somehow collected after his arrest in June 1980 (perhaps from the Buick) and placed in the files of the Jefferson Parish Crime Lab. On direct appeal, Taylor's attorney charged that the state had violated

---

**2.** See La.Code Crim.P. art. 905.4 (West Supp. 1983)

**3.** The coroner testified that Vogler was stabbed approximately twenty times and that he bled to death in the trunk of his car ten or twenty minutes after being stabbed.

Taylor's due process rights[4] by discarding some fingerprints collected from the crime scene and misplacing others. The Louisiana Supreme Court rejected these arguments, discussing their merits at length. 422 So.2d at 113–115.

After his conviction was affirmed on direct appeal, Taylor sought a writ of mandamus in Louisiana state court for the purpose of obtaining the police records of the investigation of Vogler's murder, which were made available to him on April 27, 1983. These records included the one additional piece of evidence on which Manning based his collateral attacks on Taylor's conviction. That piece of evidence is a fingerprint log book maintained by the Jefferson Parish Crime Lab division. The entries relating to the prints lifted from Vogler's Cadillac are "½ palm" in the "Good and filed" column and in the "No good" column, the numerals 4 and 1. It is Manning's contention that the entry of five "no good" *prints,* compared with the fact that five fingerprint *lifts* were taken from the Cadillac, proves that as of February 10, 1980, the state had no usable fingerprints from the crime scene. Manning argues, without evidentiary support, that the "½ palm" entry must have been added after Taylor's arrest.

Using as exhibits the copies of the fingerprint log book entries obtained through his mandamus action, Taylor filed a petition for post-conviction relief in state court on May 22, 1983. He argued that his due process rights were violated by the use of manufactured evidence against him at trial and by the failure of the state to produce the fingerprint log book when he requested any exculpatory material in its possession. The claims were rejected, without a hearing, by the state district court on January 11, 1984, and by the Louisiana Supreme Court on February 3, 1984. On January 17, 1984, the state trial judge ordered Taylor to be put to death on February 29, 1984, between midnight and 3:00 a.m.

## B.

Taylor filed a petition for a writ of habeas corpus and an application for a stay of execution with the United States District Court for the Eastern District of Louisiana. The district court considered and rejected without a hearing the two claims Taylor had presented in his state court petitions for post-conviction relief. The district judge, finding the manufactured-evidence claim "palpably incredible" and rejecting the *Brady* claim on the ground that the fingerprint log book was not exculpatory material, denied the petition for habeas corpus and the application for a stay of execution. He also refused to issue a certificate of probable cause, a prerequisite for appeal.[5] The district court's seventeen-page memorandum opinion was filed on February 15, 1984, 581 F.Supp. 359.

On that same date, Taylor retained a new attorney, Frank Sloan, and discharged Manning, who had represented him at trial, on direct appeal, and throughout his post-conviction proceedings. Sloan reviewed the trial record and, on February 20, 1984, filed with this court an application for a stay of execution and for a certificate of probable cause. Sloan's application requested an order staying Taylor's execution pending appeal from the district court's order of February 15. In addition, Sloan requested that this court consider two additional claims, which had not been presented previously to any court, under Fifth Circuit Local Rule 8.1.3.[6] The new claims were that Taylor had been deprived of effective assistance of counsel during both the guilt and sentencing phases of his trial. Because a member of this panel expressed concern that Sloan had not demonstrated cause for failing to present the new claims to either state

4. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

5. 28 U.S.C. § 2253 (1976).

6. Local Rule 8.1.3 provides:

If an issue is raised that either was not raised before the district court or has not been exhausted in state court, the applicant shall state the reasons why such prior action was not taken and why a stay should nonetheless be granted.

courts or the federal district court, and because Sloan indicated to the Clerk of this Court that he would make an effort to exhaust state post-conviction remedies and to file a federal habeas petition with the district court, we have not previously acted on Taylor's application for a stay and for a certificate of probable cause.

Taylor immediately presented these new claims to the Louisiana Courts, and on February 24 the Louisiana Supreme Court denied his motions for relief, including the request for stay of execution. A second habeas petition was filed the next day, Saturday, February 25, with the federal district court.

Earlier today, after hearing arguments from counsel, the federal district court denied Taylor's second habeas petition and the accompanying stay application. The district judge refused to issue a certificate of probable cause. He dictated the reasons for these orders into the hearing transcript which we now have before us. Taylor immediately filed a notice of appeal and application for a certificate of probable cause with this court.

### III.

Taylor's stay application and request for a certificate of probable cause with respect to the district court's order of February 15 are properly before this court. We have granted James Manning's request for amicus curiae status solely for the purpose of submitting a brief regarding those issues.

Taylor's request for leave to present new issues to this Court pursuant to Local Rule 8.1.3 has been mooted by his exhaustion of state remedies and the district court's action on his second habeas petition.

Finally, there is also before this court Taylor's request for a certificate of probable cause and for a stay of execution pending appeal of the order of the district court, entered this morning, denying his second habeas petition.

### IV.

### A.

■ We first consider Taylor's request for a certificate of probable cause in con-

junction with the denial of his first habeas petition. A petitioner must make a "substantial showing of the denial of a federal right" in order to obtain such a certificate, without which this court has no jurisdiction over the appeal of the denial of a state prisoner's habeas petition. *Fabian v. Reed,* 714 F.2d 39, 40 (5th Cir.1983).

Taylor raised two grounds for habeas relief before the district court, both contingent on inferences drawn from a single piece of documentary evidence, the fingerprint log book. After examining the log book, the district court determined that Taylor's allegation that the latent palmprint was not lifted from the crime scene was so "palpably incredible" as to warrant summary dismissal, *citing Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

The district court in its memorandum opinion explains in detail the reasons why the documentary evidence does not support the inference Taylor attempts to draw from it. The log book entries refer to individual prints, five of which were "no good" for identification purposes. The envelope in which the prints were stored refers to five lifts taken at the crime scene. The district court correctly points out that "prints" and "lifts" are not the same thing. The crime lab fingerprint technician testified at trial that lifts are pieces of plastic tape on which prints are collected, and that they may contain more than one print. In fact, the evidence presented in this case revealed that two of the lifts taken from the crime scene did contain multiple prints. The entry of "½ palm" in the "good" column clearly refers to a single *print;* this fact is inconsistent with Taylor's argument that the numbers in the second column mean that five *lifts* were "no good."

■ On the basis of the district court's well-reasoned treatment of the manufactured evidence claim and our independent examination of the state trial record and the new exhibits, we hold that summary

dismissal of the first habeas petition was appropriate. The existence of the described entries in the fingerprint log book does not create a genuine factual dispute over whether the palmprint was manufactured, especially since the log book itself documents the existence of a partial palmprint in the crime lab files on February 10, 1980. Even reading the log book entries to mean that five *lifts* were found to be unusable by the fingerprint technician, the log book merely establishes a discrepancy in the recorded numbers of lifts taken from the Cadillac. There is absolutely no evidence in the record which indicates that the "½ palm" entry was not made on February 10, 1980. Nor is there any evidence to contradict the testimony of the fingerprint technicians that a usable partial palmprint was taken from the Cadillac on that date. The conclusory allegations to the contrary do not entitle Taylor to a federal evidentiary hearing. *Ross v. Estelle,* 694 F.2d 1008, 1011 & n. 2 (5th Cir.1983). The *Brady* claim necessarily falls with the manufactured-evidence claim, because the state was under no obligation to turn over non-exculpatory evidence to Taylor.

Taylor has failed to make a substantial showing of the denial of a federal right with respect to the claims contained in his first habeas petition. This application for a certificate of probable cause is denied; accordingly, this panel has no jurisdiction over this appeal, which is dismissed. *Fabian v. Reed,* 714 F.2d at 40. The first application for a stay of execution is denied.

### B.

The district court has today considered and rejected four grounds for relief claimed by Taylor in his second habeas petition: (1) that he was ineffectively represented in his prior habeas petitions, (2) that he was inef-

fectively represented in the guilt phase of trial, (3) that he was ineffectively represented at the sentencing phase of trial, and (4) that his conviction was unlawfully obtained through the use of evidence gathered after unlawful arrest.[7] These claims were apparently exhausted in the second state petition.

We note here that our jurisdiction depends upon our first granting a certificate of probable cause since the district court has failed to do so. We also decline to issue the certificate because we find that the petitioner has not made a substantial showing of the denial of a federal constitutional right.

In order to be entitled to an evidentiary hearing before the district court, a habeas petitioner must allege facts which, if proved, would entitle him to relief. *Rutledge v. Wainwright,* 625 F.2d 1200 (5th Cir.1980), *cert. denied,* 450 U.S. 1033, 101 S.Ct. 1746, 68 L.Ed.2d 229 (1981). A habeas petitioner, in order to obtain relief based on a claim of ineffective assistance of counsel, must demonstrate both an identifiable lapse in the performance of his attorney and an actual adverse impact on the fairness of his trial resulting from the lapse. *Daniels v. Maggio,* 669 F.2d 1075, 1077 (5th Cir.), *cert. denied,* 459 U.S. 968, 103 S.Ct. 295, 74 L.Ed.2d 278 (1982); *Boyd v. Estelle,* 661 F.2d 388, 389–90 (5th Cir.1981); *Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983). In evaluating allegations of ineffectiveness, the federal court applies two presumptions. The first is that trial counsel is presumed to have been competent. Second, the failure to present a particular line of argument or evidence is presumed to have been the result of strategic choice. *Washington v.*

---

**7.** This last claim is clearly foreclosed by *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), in that Taylor has not even attempted to show that he was denied a full and fair opportunity to litigate it in state court. Nevertheless our examination of the record shows that the arrest complained of resulted from a stop of the automobile after it had crossed the highway and veered in front of the oncoming sheriff's car; when stopped for this violation Taylor could produce no driver's license. In the course of this stop, however, the petitioner escaped and was not captured until he was arrested three or four days later for a different automobile theft. It is after this second arrest, not here challenged, that the petitioner's palm print was taken.

*Strickland,* 693 F.2d at 1250 n. 11, 1257. In determining whether a certificate of probable cause should issue, we must consider whether Taylor has alleged any facts which, if proved, would entitle him to a hearing.

First, Taylor claimed he was denied effective assistance of counsel in his previous habeas petitions because his attorney, Manning, failed to raise the arguments raised before this court now. The fact that these claims were not raised by petitioner's former attorney does not relate to the validity of Taylor's conviction nor does it relate to his entitlement to a hearing on the effectiveness of his representation at his trial. Therefore, it serves as no basis for habeas relief.

Second, with respect to the performance of his counsel at the guilt phase of trial, Taylor alleges several identifiable lapses. The first of these is the failure to move to suppress evidence gained following Taylor's arrest in Millry, Alabama. The arresting officer testified that he stopped Taylor after Taylor had swerved in front of the patrol car. In his habeas petition, Taylor alleges no facts upon which trial counsel could have even arguably challenged the validity of the arrest. Absent such allegations, we can identify no failure on the part of trial counsel.[8] Second, Taylor alleges that his trial counsel failed to object to Susan Vogler's hearsay statement that her husband had been called by a black man on the night of his murder. Any prejudice resulting from the failure to object to this evidence was minimal, however, because (1) the hair found in the Cadillac placed a black man at the crime scene, and (2) the hearsay declaration is consistent with Taylor's own alibi defense which implicated Allen Thomas and a black man in the murder. The reference to a black man certainly was no specific reference to Taylor individually. Even though an objection might have properly been sustained to this hearsay,[9] we are totally unprepared to say that, assuming

this to be a "lapse," it amounted to ineffectiveness of constitutional proportions. Third, Taylor alleges that his trial counsel failed to investigate a possible diminished capacity defense based on alcohol abuse. Although Taylor testified that he was drunk on one occasion (on February 9, 1980, when he wrecked the Buick), the record contains no other evidence of alcohol abuse. Drunkenness on a single occasion unrelated to the crime itself does not, under the circumstances described here, impose a duty on counsel to consult medical experts for the purpose of developing a diminished capacity defense. Fourth, Taylor challenges his trial attorneys' preparation, alleging generally that cross-examination was unproductive and that direct examination of defense witnesses unnecessarily elicited responses prejudicial to the defense. Again, no supporting facts are alleged in relation to this claim. On the contrary, we have read the entire transcript of this trial and it reveals active, aggressive and reasonably effective representation of the defendant throughout the guilt phase. The record as we read it is consistent with the state's contention that counsel focused on definite trial strategy: to make every effort to destroy the believability of the only evidence that placed Taylor at the scene of the murder, that is, the palmprint. The record supports the argument that counsel wanted Taylor to tell everything and hide nothing in the hopes that the jury would find the defendant open, frank and ultimately truthful in his denial of the murder. In sum, with the possible exception of the failure to object to the hearsay statement by Mrs. Vogler, Taylor has identified no "lapse" in his trial representation. He alleges no facts relevant to the adequacy of his representation at the guilt phase of trial which, if proved, would entitle him to habeas relief; instead, he relies on conclusory allegations, and the district court was correct in deny-

---

**8.** *See* footnote 7, *supra.* Since the record does not support the alleged Fourth Amendment violation, we need not determine whether *Stone v. Powell* precludes our consideration of a Fourth

Amendment issue in evaluating claims of ineffective assistance of counsel.

**9.** *See, e.g.,* Fed.R.Evid. 803(1).

ing a hearing on this claim of ineffectiveness.

▓▓▓▓ Taylor's third and final allegation of ineffectiveness of counsel relates to Manning's performance during the sentencing phase of trial. Manning began to argue as a mitigating factor that the evidence against Taylor was so slight that Taylor should not be put to death. The trial judge prohibited this line of argument as relevant only as to the issue of guilt. Manning made no further argument on Taylor's behalf.

Taylor does not allege that his trial attorneys failed to investigate evidence which might have been offered in his support at the sentencing phase of trial. He does not identify witnesses who should have been called to testify and were not called. He does not allege that the failure to argue other lines of defense at this phase, if a strategic choice, was such an unreasonable one that it constituted a deprivation of Taylor's right to effective counsel. At this stage, Taylor argues that he is entitled to a hearing on this issue because the silence of his attorneys at the sentencing phase of trial raises a presumption of ineffectiveness.

The law in this circuit is clear: to be entitled to a hearing on ineffectiveness, a habeas petitioner must allege facts which, if proved, would overcome the presumptions that trial counsel is effective and that trial conduct is the product of reasoned strategy decisions. To grant Taylor a hearing based solely upon the silence of his attorney would violate this well-founded rule. Under the law of this circuit, Taylor was not entitled on conclusory allegations to an evidentiary hearing regarding the effectiveness of counsel at the sentencing stage. *Ross v. Estelle,* 694 F.2d at 1011.[10]

Taylor has not made the "substantial showing" necessary to sustain the grant of a certificate of probable cause necessary to maintain his appeal.[11] Therefore, the request for a certificate of probable cause is denied, and the appeal from the order of the district court dated February 27, 1984, is dismissed. The second application for a stay of execution is denied.

## V.

In summary, in cause number 84–3108, the application for certificate of probable cause is DENIED, the appeal is DISMISSED, and the application for stay of execution is DENIED. In cause number 84–3141, the application for certificate of probable cause is DENIED, the appeal is DISMISSED, and the application for stay of execution is DENIED.

▓▓▓▓▓▓

**10.** We recognize that counsel's failure to adduce any testimony or to make any argument to the jury at the sentencing stage appears unusual. Our reading of the record in this case shows that the silence of counsel at this stage is consistent with a deliberate choice in strategy. First, any character evidence offered in mitigation could have invited a state response, not only underscoring the previous convictions which the jury already knew about, but also such facts as those noted in his Capital Sentence Report, including that he was discharged as an undesirable from the armed forces, that he contributed little to the support of his legitimate children and nothing to the support of three illegitimate children. 422 So.2d at 119. Furthermore, counsel at the guilt phase had urged the jury not to sentence the petitioner to death based on such questionable and tenuous evidence as the palmprint. He dwelled on what he apparently considered to be his best hope of saving Taylor, urging the jury not to put the man to death on the basis of evidence which was not certain. The Louisiana Supreme Court correctly noted in its order dated February 24, 1984, that this argument was undoubtedly still fresh in the minds of the jurors as they sat in the sentencing phase of the trial.

**11.** Because of the manner in which we have decided the case, it is unnecessary for us to address the question of writ abuse, which was the basis of the district court's denial of relief.