**Michael Scott MARTIN, Plaintiff-Appellant,**

v.

**O.L. McCOTTER, Director, Texas Department of Corrections, Defendant-Appellee.**

No. 85–1311.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1986.

Rehearing and Rehearing En Banc Denied Sept. 12, 1986.

Timothy J. Ferreri and Melinda Hoyle Bozarth, Huntsville, Tex., for plaintiff-appellant.

William C. Zapalac and Jim Mattox, Atty. Gen., Austin, Tex., for defendant-appellee.

Before THORNBERRY, POLITZ and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Petitioner Michael Scott Martin appeals from the District Court's denial of habeas relief, 28 U.S.C. §§ 2241, 2254. We affirm.

## I.

The record reflects that on July 14, 1979, Doyle Lovelady was robbed at gunpoint at a service station in Garland, Texas. The robber taped Lovelady to restrain him, twice threatened Lovelady with death, and at one point struck Lovelady with the gun. A Garland police officer, Dennis Wheatley, identified Michael Scott Martin in the area of the robbery a short time after the robbery had been committed. Wheatley was familiar with Martin as he had previously arrested Martin for aggravated assault; Martin had been sentenced on the prior aggravated assault conviction on July 9, 1979, receiving four years probation and a $2,500 fine. When Officer Wheatley learned of the Garland robbery, he suspected that Martin might have been involved and prepared a photographic display. Lovelady positively identified Martin the next day as the person who had robbed him.

At trial before a jury, the State presented the testimony of Lovelady, who identi-

fied Martin as the robber. Martin offered an alibi defense. Numerous witnesses were called to testify to Martin's good character and whereabouts on July 14, 1979. After various witnesses had claimed that Martin was at his residence at Lake Worth in Tarrant County, Texas, on the date and time of the Garland robbery, Martin himself took the stand. Martin acknowledged his previous conviction for aggravated assault, but argued his innocence in the robbery at issue. Martin reiterated his alibi defense. In an attempt to cast doubt upon Lovelady's in-court identification of Martin, defense counsel sought to establish that Lovelady had seen Martin prior to entering the courtroom.

In rebuttal, the State called Officer Wheatley, who testified to knowing Martin prior to July 14, 1979, and testified to seeing Martin in the vicinity of the robbery shortly after the robbery had occurred. Wheatley also discussed Lovelady's previous identification of Martin from the photographic display. Martin was convicted of aggravated robbery, and, after a sentencing hearing at which his two defense counsel offered no argument, and at which neither the State nor the defense offered any additional evidence, was sentenced to life imprisonment.

After exhausting his state remedies, Martin filed a federal petition for writ of habeas corpus. An evidentiary hearing was held. On March 13, 1985, the United States Magistrate filed proposed findings of fact and conclusions of law, recommending that Martin's application for habeas relief be denied and dismissed. The District Court adopted the Magistrate's recommendation, and, on April 17, 1985, entered an order denying relief.

## II.

Martin claims in his petition for habeas relief that he received ineffective assistance of counsel at both the guilt-innocence and sentencing stages of his trial. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that "[t]he bench mark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064. The Court enunciated a two-pronged test for determining the effectiveness of counsel's performance:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064. We need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697, 104 S.Ct. at 2069.

To satisfy the deficiency prong of the *Strickland* test, the defendant must show that counsel's representation fell below an objective standard of reasonableness as informed by prevailing professional standards. *Id.* at 688, 104 S.Ct. at 2065. Great deference is given to counsel, "strongly presuming that counsel has exercised reasonable professional judgment." *Lockhart v. McCotter,* 782 F.2d 1275, 1279 (5th Cir.1986) (citing *Ricalday v. Procunier,* 736 F.2d 203, 206 (5th Cir.1984)). To fulfill successfully the prejudice prong, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different."

*Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome;" a defendant need not, however, show that "counsel's deficient conduct more likely than not altered the outcome of the case." *Id.* "Our assessment of counsel's performance requires us to make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time." *Moore v. Maggio,* 740 F.2d 308, 315 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985).

■ Because both the deficiency and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact, we must make an independent determination of whether counsel's representation satisfied the Sixth Amendment. *Mattheson v. King,* 751 F.2d 1432, 1438 (5th Cir. 1985), *cert. dismissed,* —— U.S. ——, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986). To the extent that state and federal courts make specific predicate factual findings, we must apply the § 2254(d) presumption of correctness and the clearly erroneous standard of Fed.R.Civ.P. 52(a), respectively. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070.

### III.

■ Martin alleges a plethora of errors by his two defense counsel at the guilt-innocence phase of trial. Martin first contends that one of his counsel erred in failing to appeal Martin's prior conviction for aggravated assault; if the conviction had been placed on appeal, it would not have been admissible at the subsequent trial on the aggravated robbery charge. Even assuming that this contention of an alleged error by one of the defense counsel in a separate prior criminal proceeding is properly before us in the instant case, Martin is not entitled to relief. The testimony at the evidentiary hearing indicated that the decision not to appeal the aggravated assault conviction reflected the exercise of reasonable professional judgment. Despite the seriousness of this prior offense—as Martin admitted on the stand, he robbed a grocery store with a knife and gun and fired four shots at his pursuers—Martin received a sentence of only four years probation and a $2,500 fine. The prosecutor suggested that the State would not oppose an appeal, but instead welcomed an opportunity to secure a more severe sentence. Counsel's choice not to run that risk was not deficient.

Martin next complains about the manner in which the jury was informed of his prior conviction. Martin's argument here is rather vague. As the Magistrate found, the record reflects that the defense endeavored to be open and honest with the jury about Martin's prior conviction, seeking to present Martin as a man who, although guilty of one crime, was innocent of the robbery for which he was now on trial. It was determined before trial that Martin would testify on his own behalf as to alibi. Martin admitted at the evidentiary hearing that he was aware that, if he took the stand, his prior conviction might be introduced against him.

■ Defense counsel chose to have Martin testify as the final alibi witness. Although both defense counsel and the prosecution made reference to the aggravated assault conviction when the twelfth defense witness was on the stand, it was not until Martin testified, as the fourteenth defense witness, that the details of the prior conviction were revealed. Martin now argues that his prior conviction should have been brought out earlier, claiming that counsel's decision to present Martin as the final alibi witness was unreasonable. Martin seeks somehow to bolster his argument by noting that although defense counsel intended to have Martin reveal the details of his prior conviction when he took the stand, that plan was to some extent aborted when the twelfth defense witness mentioned the prior conviction. The fact that Martin now complains about the results of the trial strategy chosen, however, does not undermine the reasonableness of counsel's decision to present Martin as the ultimate alibi witness, whose statements would be bolstered by the testimony that

had preceded him. Again, we find no deficiency in counsel's performance.

■ Similarly, we find no deficiency in counsel's failure to object to a question proffered by the prosecution. After the defense had rested its case, the prosecution recalled Martin to the stand and asked him whether he was handcuffed when the court was not in session. Martin had already testified to his prior conviction. Instead of objecting, defense counsel led Martin to explain that because of his prior conviction, he was still in jail and not eligible for bail. At the evidentiary hearing, counsel testified that he did not object because the jury would get its explanation for the handcuffs from Martin. Counsel's decision to be open and honest with the jury about the prior conviction, even if ultimately unsuccessful, was not unreasonable, and the failure to object will not be condemned in hindsight.

■ Martin additionally complains that his counsel was ineffective in examining Officer Wheatley, the prosecution's rebuttal witness.[1] Although Martin argues that his counsel engaged in "aimless questioning," our own review of the cross-examination at issue supports the Magistrate's finding that counsel did not engage in "aimless questioning," but, to the contrary, elicited from Officer Wheatley a number of crucial details: Martin had consented to a search of his house at which no items were taken; no fingerprints identifiable as Martin's were found at the robbery site or on the car allegedly used in the robbery; and the victim did not immediately select Martin's photograph from the photographic spread, but instead studied "two pictures in particular." Counsel's cross-examination of Officer Wheatley was not deficient.

■ Finally, Martin claims that defense counsel bolstered the State's case by emphasizing during closing argument how

fair the photographic spread had been: "Now this is what I would call a good spread.. I mean, you know, the people in here looked similar and all." Counsel's admission that the photographs themselves were not suggestive was consistent with the strategy of openness with the jury. As counsel observed at the evidentiary hearing, he did not want to "make the police officers look silly when the jury kn[ew] better right then." Counsel tried to cast doubt upon Lovelady's identification of Martin in other ways: counsel argued that Officer Wheatley somehow influenced the photographic identification, and claimed further that Lovelady had observed Martin in the courtroom prior to his in-court identification. Moreover, as counsel emphasized at the evidentiary hearing, Martin's defense was not one of a suggestive photographic spread, but rather, alibi. We find no deficiency in counsel's performance.

## IV.

■ Martin's counsel presented no evidence at the sentencing phase of the trial. At the evidentiary hearing, Martin's mother claimed that she would have been willing to testify to Martin's character. Both Martin's mother and his sister additionally argued that other unnamed friends and family members had been available to testify to Martin's character at the sentencing phase of the trial. One of Martin's defense counsel explained at the evidentiary hearing that because many of Martin's positive character traits had been brought out at the guilt-innocence phase of trial, he saw no need to present additional evidence of Martin's character: "And certainly, unless you really had something that nobody had ever heard before, to then start putting witnesses up there to testify to it again, that would not occur to me to do." The other defense counsel, however, testified

---

1. Martin also claims that his counsel erred in not requesting a hearing outside the jury's presence on the photographic spread. This claim clearly must fail. At the evidentiary hearing, defense counsel testified that no such request was made because there was nothing improper about the photographic spread. In his habeas brief, Martin alleges no defects in the photographic spread. We agree with the Magistrate that it was not deficient for counsel to forego a hearing and to decide against urging a frivolous motion to suppress a photographic spread that comported with constitutional standards.

only that he did not know what mitigating evidence existed. It is thus unclear to what extent defense counsel investigated the possibility of presenting mitigating evidence and to what extent the decision not to present such evidence constituted a reasonable strategic choice.

In any event, even assuming that counsel's performance was deficient here, Martin's claim of ineffective assistance of counsel must fail, as we do not believe that Martin has shown a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the sentencing would have been different. The violent nature of the robbery supported the imposition of a heavy sentence. The jury had heard testimony from the victim, Lovelady, nineteen years old at the time of trial, that Martin had taped him and twice threatened to kill him, had placed the gun to the back of his head, and had struck him with the gun. Moreover, Martin had received a probated sentence for the offense of aggravated assault less than one week before committing the armed robbery. The aggravated assault involved a knife and a gun—four shots had been fired at the victims—and the State had emphasized the violent nature of this prior offense. Although Martin had testified upon direct that he was "grateful to have gotten the probation" and "intended to treat it with due respect," the jury could well have concluded that Martin had not treated his probation with respect and that a more serious punishment would now be warranted.

In addition, even at this late date, the nature of the mitigating evidence available remains vague: according to Martin's mother and sister, Martin's mother and other unspecified family members and friends were available to testify to Martin's "character." Such unspecified testimony, standing alone, particularly in light of the circumstances of this crime, does not satisfy the prejudice component of the *Strickland* test. *Mattheson v. King,* 751 F.2d at 1441. "[H]ypothetical or theoretical" testimony will not justify the issuance of a writ: "Rather, the petitioner must demonstrate that the 'might have beens' would have

been important enough to affect the proceedings' reliability." *Id.* (quoting *Larsen v. Maggio,* 736 F.2d 215, 218 (5th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 598, 83 L.Ed.2d 707 (1984)). In summary, we are not persuaded that there is a reasonable probability that Martin's counsel's failure to present mitigating evidence at the sentencing hearing affected the sentence Martin received. *See Willie v. Maggio,* 737 F.2d 1372 (5th Cir.1984) (finding no prejudice under *Strickland* where petitioner claimed numerous relatives and friends never called by counsel were ready to testify at his sentencing hearing; concluding that even if counsel had offered the mitigating evidence, there was no reasonable probability that the evidence would have affected the penalty imposed); *Celestine v. Blackburn,* 750 F.2d 353 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3490, 87 L.Ed.2d 624 (1985) (finding no *Strickland* prejudice in counsel's failure to present the testimony of defendant's friends, relatives and employers as to defendant's conscientiousness, dependability, faith and non-violent disposition at the penalty phase of a capital trial).

Martin's most serious allegation of ineffective assistance of counsel focuses upon his counsel's failure to offer a closing argument at the sentencing hearing. The trial record reveals that after the first State prosecutor had made his opening argument at the sentencing phase of trial, Martin's defense counsel announced that the defense would present no argument. When the court recognized the second prosecutor, defense counsel objected. After overruling the objection, the trial judge immediately offered defense counsel the opportunity to reconsider the choice not to argue. Receiving a negative response, the court allowed the second prosecutor to present his argument to the jury. Martin now claims (1) that his counsel's decision to forego argument at the sentencing hearing constituted a constructive denial of counsel rendering a showing of prejudice unnecessary under *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and (2)

that even if *Strickland* prejudice must be shown, it exists in the instant case.

In *Cronic*, the Supreme Court observed that "[t]here are circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658, 104 S.Ct. at 2047. Such circumstances exist "if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," the adversary process becomes presumptively unreliable. *Id.* at 659, 104 S.Ct. at 2047. As the Supreme Court explained further in *Strickland v. Washington,* the "[a]ctual or constructive denial of counsel altogether is legally presumed to result in prejudice." 466 U.S. at 692, 104 S.Ct. at 2067. Finally, the Court has "presumed prejudice when counsel labors under an actual conflict of interest." *Cronic,* 466 U.S. at 662 n. 31, 104 S.Ct. at 2048 n. 31. "When *Cronic* and *Washington* are read in conjunction, it becomes evident that *Cronic's* presumption of prejudice applies to only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied *any meaningful assistance at all." Chadwick v. Green,* 740 F.2d 897, 901 (11th Cir.1984) (emphasis added).

▉ We conclude, as did the Magistrate and the District Court, that counsel's decision to forego argument at the sentencing phase of Martin's trial did not constitute a constructive denial of counsel such as to render a showing of *Strickland* prejudice unnecessary. Counsel, although silent at the sentencing stage, did not "entirely fail [ ]" to subject the prosecutor's case to meaningful adversarial testing. *Cronic,* 466 U.S. at 659, 104 S.Ct. at 2047. Martin was not without "any meaningful assistance at all." *Chadwick,* 740 F.2d at 901. In *Martin v. Rose,* 744 F.2d 1245 (6th Cir. 1984), the Sixth Circuit found constitutional error absent a showing of prejudice where counsel refused to participate in *any* aspect of the trial. In contrast, counsel in the instant case participated vigorously in the guilt-innocence phase of Martin's trial. For example, counsel elicited testimony that Martin had promised his victim to get help, that Martin was a "good employee," that Martin got along "very well" with his co-workers, and that Martin was current on his bank account—testimony that would seem relevant not only to the determination of guilt or innocence but also to the sentencing decision. Counsel's active representation of Martin during the guilt-innocence phase was relevant to the sentencing phase; counsel's representation does not seem so deficient as to amount to "no representation at all." *See Blake v. Kemp,* 758 F.2d 523 (11th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985) (refusing to find presumptively prejudicial defense counsel's failure to make any preparation whatsoever for the sentencing phase of a capital trial; reasoning that evidence presented during guilt-innocence phase was relevant to sentencing phase, rendering counsel's performance not so deficient as to amount to no representation at all).

Moreover, the Eleventh Circuit has recently declined to follow the Sixth Circuit's invocation of *Cronic* in the face of attorney silence. In *Warner v. Ford,* 752 F.2d 622, 625 (11th Cir.1985), the Eleventh Circuit refused to presume prejudice where defense counsel had been silent throughout the guilt-innocence phase of trial, explaining that whether prejudice need be shown must be judged on a case-by-case basis. Thus, on balance, we find that Martin must seek relief under the test announced in *Strickland v. Washington. See also Lockhart v. McCotter,* 782 F.2d 1275 (5th Cir. 1986) (applying *Strickland* prejudice test to determine whether counsel's filing of an "affidavit of counsel" stating that petitioner's appeal was without merit—tantamount to making no argument on appeal at all—constituted ineffective assistance of counsel given the existence of two nonfrivolous grounds for appeal); *Taylor v. Maggio,* 727 F.2d 341 (5th Cir.1984) (pre-*Strickland* case in which court rejected defendant's argument that he was entitled to an evidentiary hearing; defendant unsuccessfully

claimed that the silence of counsel at the sentencing phase of trial raised a presumption of ineffectiveness).

■ We thus must address whether Martin has satisfied the two-prong test of *Strickland.* We conclude that he has not. The Magistrate found that there was no tactical basis for counsel's decision to forego argument and that counsel's performance was therefore deficient. The Magistrate nevertheless recommended a denial of habeas relief, finding that Martin did not meet his burden of showing *Strickland* prejudice. Because we agree with the latter conclusion, we need not address the former: as noted above, both components of *Strickland* need not be discussed if the petitioner makes an insufficient showing on one.[2]

As discussed earlier, the crime for which Martin was sentenced was violent in nature. The victim testified at length as to the threats against his life, the gun to his head and the blow with the gun dealt him by Martin. Martin had been given a light sentence for aggravated assault less than a week before committing this aggravated robbery. The violent details of the prior conviction were known to the jury. Although we by no means imply that counsel's silence may never be prejudicial, we do not believe that on the facts of the case *sub judice* there exists a reasonable probability that Martin would have received a sentence less than life had his counsel made an argument at the sentencing phase of trial.

For the reasons discussed above, the district court's order denying habeas relief is AFFIRMED.

---

**2.** Although we thus need not decide whether the Magistrate was clearly erroneous in finding counsel to have acted without a tactical basis, we observe that at the evidentiary hearing, defense counsel offered several reasons for the decision not to make a closing argument. First, defense counsel claimed that Martin had refused to display remorse and did not want to "crawl" to the jury. Evid. Hearing Tr. at 92. Second, counsel believed that the jury disliked, disbelieved and distrusted Martin, and counsel did not want to aggravate the jury by arguing Martin's good traits when the jury was already "mad at the evidence they've heard." *Id.* at

78–79. Third, counsel did not want to act as a "foil" for the prosecution, enabling the prosecution to "reply all the harder." *Id.* This last reason seems similar to that we discussed in *Taylor v. Maggio,* 727 F.2d 341, 349 (5th Cir. 1984), a pre-*Strickland* case. In *Taylor,* we noted that counsel's silence at the sentencing stage appeared to be a strategic choice, as any argument made could invite a State response which not only might underscore a previous conviction about which—as here—the jury was already aware, but might also invite the introduction of other unfavorable character traits.