**Herbert Herman FEIST**

v.

**Wayne SCOTT, Director, Texas Department of Criminal Justice, Institutional Division.**

No. 1:93–CV–465.

United States District Court, E.D. Texas, Beaumont Division.

April 24, 1995.

Ethan Shaw, Beaumont, TX, for petitioner.

Amy Holley Hennessee, Asst. Atty. Gen., Austin, TX, for defendant.

## MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

SCHELL, Chief Judge.

Petitioner filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, *in forma pauperis.*

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The court has received and considered the Report of the United States Magistrate Judge filed pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the Report of the Magistrate Judge is **ADOPTED**. A final judgment will be entered in this case in accordance with the magistrate judge's recommendations.

### FINAL JUDGMENT

This action came on before the Court, Honorable Richard A. Schell, District Judge, presiding, and the issues having been duly considered and a decision having been duly rendered, it is

**ORDERED** and **ADJUDGED** that this Petition for Writ of Habeas Corpus is **DENIED**. All motions by either party not previously ruled on are hereby **DENIED**.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

This is a petition for a writ of habeas corpus filed by Herbert Herman Feist, a convicted prisoner in the custody of the Texas Department of Criminal Justice, Institutional Division ("TDCJ–ID," formerly the Texas Department of Corrections, "TDC"), Clements Unit. Jurisdiction is based on 28 U.S.C. § 2254.

This action was referred to a United States magistrate judge pursuant to Title 28 U.S.C. § 636, for review, evidentiary hearing if deemed necessary, and submission of a report and recommendation. *See* 28 U.S.C. § 636(b)(1); Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate.

## I. THE CONVICTION AND SENTENCE

Petitioner was convicted in 1981 on a charge of aggravated robbery in the 252d Criminal District Court of Jefferson County, Texas. He pleaded "true" to an enhancement count, and received a sentence of forty years imprisonment as a repeat offender. *State v. Feist,* No. 39295 (Apr. 7, 1981).

The Court of Appeals for the Ninth Supreme Judicial District of Texas affirmed the conviction and forty year sentence assessed by jury on direct appeal. *Feist v. State,* 631 S.W.2d 769 (Tex.App.—Beaumont 1982). The Court of Criminal Appeals denied petitioner's writ without written order. *Feist v. State,* No. 12375 (Tex.Crim.App. Feb. 9, 1983).

## II. EXHAUSTION OF STATE HABEAS CORPUS REMEDIES

### A. The Exhaustion Requirement

■ A state prisoner must exhaust all remedies available in state court before proceeding in federal court unless circumstances exist which render the state corrective procedure ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b) and (c). In order to exhaust properly, a state prisoner must "fairly present" all of his claims to the appropriate state court. *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). In Texas, all claims must be presented to and ruled on by the Court of Criminal

Appeals. *Richardson v. Procunier,* 762 F.2d 429 (5th Cir.1985). If one or more of the claims raised in the petition is unexhausted, the entire petition must be dismissed for failure to exhaust state remedies. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

In Texas, two avenues are available to a petitioner attempting to fairly present his claim to the Court of Criminal Appeals. First, a petitioner may directly appeal his conviction by filing a petition for discretionary review with the Court of Criminal Appeals. Second, a petitioner may file a post-conviction application for writ of habeas corpus in the state courts.

### B. Feist's Habeas Corpus Attempts

After his direct appeal failed, Feist instituted a persistent habeas corpus campaign directed at his enhanced sentence. He filed four successive applications for habeas corpus relief, with cause numbers 39295–A, 39295–B, 39295–C, and 39295–D. Petitioner's theories for relief have changed considerably over the course of his habeas corpus journey. He initially attacked the validity of his 1978 conviction due to "a broken plea bargain." Eventually, petitioner narrowed his theories to the solitary issue as to whether he received ineffective assistance of counsel when his 1981 attorney advised him to plead "true" to the punishment enhancement paragraph.

In Cause No. 39295–C, the Court of Criminal Appeals cited Feist for abuse of the writ and the Clerk of the Court was instructed not to accept any further applications "attacking this conviction or the prior conviction used to enhance it." The 252d Criminal District Court of Jefferson County denied relief in No. 39295–D on August 13, 1993. *State v. Feist,* No. 39295–D (Aug. 13, 1993). By letter of August 25, 1993, the Court of Criminal Appeals noted that Feist's latest application would not satisfy the requirements to overcome the abuse of the writ citation, and declined to act on the writ.

Petitioner now turns attention to the federal courts. Due to the foregoing procedural history, it is properly before this court.

### III. STANDARD OF REVIEW

### A. Alleging Violation of Federal Constitution

A state prisoner seeking federal court review of his conviction pursuant to 28 U.S.C. § 2254 must assert a violation of a federal constitutional right. *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir.1993). Federal courts do not sit as a state supreme court to review error under state law. *Skillern v. Estelle,* 720 F.2d 839, 852 (5th Cir.1983), *cert. denied sub nom., Skillern v. Procunier,* 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984). A state defendant has no constitutional right to an errorless trial. *Banks v. McGougan,* 717 F.2d 186, 190 (5th Cir.1983). Rather, federal courts grant federal habeas corpus relief only if a trial court's error is so extreme it constitutes a denial of fundamental fairness under the Due Process Clause. *Id.*

### B. Eligibility for Evidentiary Hearing

Merely alleging violation of a federal constitutional right does not merit a federal evidentiary hearing. The burden is on the habeas corpus petitioner to allege specific facts which, if proved, would entitle him to relief. *Taylor v. Maggio,* 727 F.2d 341, 347 (5th Cir.1984). No hearing is required when the petitioner alleges only conclusory allegations, *Mattheson v. King,* 751 F.2d 1432, 1448 (5th Cir.1985), *cert. dismissed,* 475 U.S. 1138, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986), or when the record is complete and the evidence presented is sufficient to provide a full review of the petitioner's claim. *Skillern v. Estelle,* 720 F.2d at 850–51 (5th Cir.); *Baldwin v. Maggio,* 704 F.2d 1325, 1327–28 (5th Cir.1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2669, 81 L.Ed.2d 374 (1984). Unless the habeas corpus petitioner alleges with specificity a claim upon which relief can be granted and demonstrates his state hearing was not a full, fair, or adequate hearing, *see* 28 U.S.C. § 2254(d), the decision of whether to hold an evidentiary hearing is discretionary in the district court. *Daigre v. Maggio,* 705 F.2d 786, 787–88 (5th Cir.1983).

## IV. FEDERAL ALLEGATIONS AND PROCEEDINGS

■ Petitioner argues that he received "shock probation" on the 1978 robbery charge.[1] He argues correctly that prior probated sentences are not admissible for punishment enhancement purposes under Texas law.[2] He asserts that his 1981 counsel failed to investigate and detect that the 1978 conviction was not "final" for enhancement purposes. As a result, no objection was made to the enhancement paragraph, and petitioner was precluded from collaterally challenging the validity of the 1978 conviction.[3]

A federal evidentiary hearing was deemed necessary in this case. Feist's allegations had potential merit. The record was conflicting and incomplete, and left the court with insufficient means to properly review petitioner's claims.

On December 6, 1994, an evidentiary hearing was held at the Jack Brooks Federal Building in Beaumont, Texas. Petitioner appeared with appointed counsel and testified on his own behalf. Neither the 1978 defense counsel nor 1981 defense counsel testified. The trial judge for both the 1978 and 1981 proceedings testified by affidavit previously submitted with respondent's supplemental motion to dismiss.

## V. DISCUSSION AND ANALYSIS

### A. The Sixth Amendment

Amendment VI to the Constitution of the United States provides:

In all criminal prosecutions, the accused shall enjoy the right to ... have the assistance of counsel for his defence.

U.S. CONST. amend. VI.

■ The Assistance of Counsel Clause has been interpreted to mean that counsel must render *effective* assistance. *See, e.g., Diaz v. Martin,* 718 F.2d 1372, 1378 (5th Cir.1983). Defense counsel who fail to investigate potentially meritorious defenses can be considered ineffective. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (ineffective assistance may arise where "counsel fails to subject the prosecutors case to meaningful adversarial testing."); *Woodard v. Collins,* 898 F.2d 1027 (5th Cir.1990). Likewise, defense counsel who advise clients to plead guilty without regard to potentially meritorious defenses may be considered ineffective. *See, e.g., Hill v. Lockhart,* 474 U.S. 52, 61, 106 S.Ct. 366, 371, 88 L.Ed.2d 203 (1985).

### B. The *Strickland* and *Joseph* Tests

To merit federal habeas relief due to ineffective assistance of counsel, petitioners must do more than allege that defense counsel made a mistake. Federal courts adhere to the rule that petitioner must show both that trial counsel's performance was deficient and that the deficiency prejudiced the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

1. *See* TEX.CRIM.PROC.CODE ANN. Art. 12.42 (Vernon 1994). The imposition of "shock probation" does not suspend a *sentence* in the way a "regular" probationary sentence might. Instead, the sentence is imposed and *future execution* is suspended. *See Ex parte Langley,* 833 S.W.2d 141, 143 (Tex.Crim.App.1992). Shock probation may or may not be followed by a supervised probationary period. Additionally, offenders convicted of robbery with deadly weapon must serve between sixty and 120 days before such probation can be imposed. *See* TEX.CRIM.PROC.CODE ANN. § 42.12(3)(f) (Vernon 1979).

2. Only final convictions may be used to enhance future sentences. *See Langley,* 833 S.W.2d at 143. Prior probated sentences are not considered final and are therefore inadmissible for punishment enhancement purposes under Texas law. *See* Tex.Penal Code Ann. 12.42(d) (Vernon 1994);

*Wilson v. State,* 857 S.W.2d 90 (Tex.App. Corpus Christi 1993, writ ref'd); *Dominque v. State,* 787 S.W.2d 107 (Tex.App.—Houston 1990, writ dism'd w.o.j.).

While the Texas Supreme Court did not rule specifically that a shock probation sentence could not be used for enhancement until 1992, *see Langley,* 833 S.W.2d 141, this standard was established with regard to general "probated" sentences prior to 1981. *See Ex parte Murchison,* 560 S.W.2d 654 (Tex.Crim.1978).

3. "By pleading 'true' to the enhancement charges, [petitioner] waived any complaints he may have had concerning the former offense which were set out in the enhancement charge." *Ellis v. Lynaugh,* 883 F.2d 363, 366 (5th Cir. 1989) (quoting *Zales v. Henderson,* 433 F.2d 20, 24 (5th Cir.1970)).

The proper standard by which to gauge counsel's performance is that of reasonable effectiveness. *Id.* at 687, 104 S.Ct. at 2064. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. Moreover, if petitioner fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.* at 697, 104 S.Ct. at 2069–70. As to the prejudice component, defendant must show that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different. *Id.*

■■■■ When a defendant enters a plea of guilty at trial, the *Strickland* analysis still applies, but with a slight modification. Challenges of ineffective assistance of counsel are limited to the issue of voluntariness of the plea and an understanding of the nature of the charges pending and the consequences of the plea. *Hill,* 474 U.S. 52, 106 S.Ct. 366. Moreover, the prejudice requirement of *Strickland,* when applied to guilty pleas, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

The two-part *Strickland* test also applies to challenges of "true" pleas for enhancement pleadings. See *Joseph v. Butler,* 838 F.2d 786, 791 (5th Cir.1988). Where the challenge is to a "true" plea, the prejudice aspect of the *Strickland* analysis is modified thus: Petitioner must "demonstrate a reasonable probability that, but for counsel's errors, he would not have admitted his prior convictions and would have demanded a trial on the [enhancement] charge." *Id.* at 791.

### C. Allegations of Prejudice?

Petitioner's claim fails on this prejudice prong of the test. While there has been much debate over whether petitioner re-

ceived shock probation, he has never asserted that he would have sought a trial of the enhancement paragraph if his attorney had acted differently. He has never, on any submission to any court, state or federal, asserted prejudice to satisfy the *Joseph* standard.

In *Joseph,* 838 F.2d 786, the Fifth Circuit found a habeas corpus petitioner had not met his burden of showing prejudice where he alleged conclusorily in his initial pleadings that, but for the ineffective assistance of his counsel, he would have sought a trial on the multiple offender charge. However, "mere allegations are obviously insufficient to reach the threshold of 'reasonable probability.'" *Id.* at 791.

In this case, there is even a lesser modicum of proof. Petitioner argues counsel should have detected the error. Even during his testimony, however, petitioner did not articulate, or even allude, to any "but for" analysis as required for habeas corpus relief.

### D. Was 1981 Counsel's Performance Deficient?

Petitioner testified that 1981 trial counsel admitted he never investigated the 1978 conviction because petitioner never asked him to. It is logical to conclude that detection of an erroneous enhancement charge would have resulted in a challenge to and trial of the enhancement charge. Therefore, it is appropriate, alternatively, to examine whether proper investigation by 1981 trial counsel would have revealed petitioner's 1978 conviction to be "shock probation," and therefore ineligible for proper enhancement use. *See* TEX.PENAL CODE 12.42(d) (Vernon 1994); *Wilson v. State,* 857 S.W.2d 90 (Tex.App. Corpus Christi 1993, *writ ref'd*); *Dominque v. State,* 787 S.W.2d 107 (Tex.App.—Houston 1990, *writ dism'd w.o.j.*).

Had the 1978 conviction been investigated, counsel may have been alerted, initially, to whether the 1978 proceeding actually resulted in "shock probation." A docket entry refers to scheduling of a "shock probation" hearing.[4] Moreover, the fact that petitioner

---

4. A Notice of Resetting for the Criminal District Court of Jefferson County, Texas, of August 16, 1979, in Cause No. 36678 and 36429, *State v.*

*Feist,* re-scheduled Hearings on Post Conviction Motions, the trial judge wrote "Shock Probation?" and "Not eligible for Shock Prob for Rob-

was discharged, not paroled, from a five year sentence after only 120 days incarceration would be consistent with a "shock probation" disposition.[5]

Full investigation, however, would have revealed the 1978 proceeding to have resulted in a final, "backdated" conviction. Petitioner was sentenced to five years incarceration, with "credit" for time served from May 2, 1974.[6] Investigation would have revealed that petitioner was still in high school in May, 1974, and thereafter entered the armed services. Thus, the "credit" for time served was a fiction.

The backdating procedure whereby defendants were credited for time not actually served was a unique practice of Jefferson County, Texas criminal district judges.[7] This procedure was utilized primarily to alleviate overburdened prison systems from having to incarcerate first offenders. Eventually, the Texas Court of Criminal Appeals declared backdating an unconstitutional practice because it permitted the judiciary to infringe on the province of the legislature. *Ex parte Hayward*, 711 S.W.2d 652 (Tex. Crim.App.1986) . . . .". The Court of Criminal Appeals held, however, that a backdated sentence is not void. Instead, it must be remanded for reformation, that is, service of the legislatively mandated incarceration. *Id.*

One consequence of backdated sentences is that defendants were shackled with final convictions, despite avoidance of all or most of their legislatively determined prison sentences. If Feist had avoided a future conviction, he simply would have continued as a convicted felon, but free. Because a later conviction followed, he was subject to the Texas enhancement statute.

As a result, the behavior of his 1981 counsel, that is, advising him to plead true to the enhancement paragraph, regardless of whether counsel actually investigated the circumstances of Feist's past convictions or not, was wholly proper because such enhancement convictions *were* true. Additionally, the constitutionality of backdated sentences had not yet been litigated, and counsel had no reason to question their legitimacy.[8]

It appears petitioner was sorely uninformed about the circumstances surrounding his plea bargain in 1978. A 1979 letter sent to the trial judge reveals petitioner's understanding was as follows:

I was offered a plea bargain that if I would cop out for eight years with the understanding that if I would do 120 days or less and then come back in front of you and you said that you would free me under no probation[9] or parole you also said that if I showed a good enough reason I could appeal this case . . . I came to Diagnostic on

---

bery (36678)." The same page included the later added note: "8–23–79 By Agreement of All Parties, Credit [illegible] 5–2–74"

**5.** *See* Tex.Crim.Proc.Code Ann. § 42.12(3)(f) (Vernon 1979).

**6.** Many of Feist's criminal records have been destroyed, as discovered by counsel for the respondent when she attempted to procure his release papers. Such records were the victim of time and administrative policies. Consequently, counsel submitted an affidavit from the 1978 trial judge, along with a 1979 letter from the Clerk of the trial court to TDC officials, stating Feist would receive "credit" for time served since 1974. *See* Letter of Judy Gant, Clerk, (August 23, 1979) ("Please be advised that the jail credit in this cause should begin as of May 2, 1974 instead of November 1, 1978 as stated in the judgment and sentence."). *See also* Memorandum and Order Adopting Magistrate Judge's Recommendation and Overruling Respondent's Objections, at 4–5 (E.D.Tex. Nov. 21, 1994) (taking judicial notice that backdating was a proce-

dure utilized by Jefferson County criminal district judges).

**7.** *See Commission Rebukes Gist*, Beaumont Enter., May 28, 1986 at 1A, 3A (Judge Gist noting "he might be the first Texas judge to approve such plea bargaining.").

**8.** Even if counsel had foreseen the constitutional infirmity of the backdating procedure eventually articulated in *Ex parte Hayward*, he might have advised petitioner to forego the challenge. *Hayward* resulted in a reformed sentence, and sent the ironically victorious inmate back to prison to serve his sentence. Therefore, Feist may have been in a worse position had his backdated 1978 sentence been overturned.

**9.** As explained in petitioner hearing testimony, this statement was made on the belief that he would have no *supervised* probation, and had nothing to do with "shock probation," which may or may not be followed by a supervised probationary period.

the 11 and no one [knows] about no 120 days so far I only have five years. Some one applied for shock prob. for me but it was denied.... *The guy in sociologically [sic] said that the only way a deal like that could be made if you had sentenced me to shock prob.* I feel I was tricked into received five years when I only suppose to do 120 days or less would you please help me in this matter.

Letter from Herbert Feist to Judge Larry Gist (June 3, 1979) (emphasis added).

The record of the 1978 proceeding reflects that petitioner initially negotiated a plea bargain agreement whereby he would receive an eight year shock probation sentence.[10] The state trial judge rejected the plea bargain agreement and entered instead the five year backdated sentence. The present record does not reflect why this change was made nor does it confirm whether petitioner was aware of or a party to it. Petitioner's letter quoted above and his persistent habeas attacks suggest that he may have been neither aware nor a party to the switch from an eight-year shock probation to a five-year final backdated sentence.

Nevertheless, petitioner did not appeal directly or collaterally attack the 1978 sentence. He accepted the benefits of the five year backdated sentence and was satisfied until it was used to enhance the sentence he received in 1981. It may be that something was amiss in 1978, but when petitioner pleaded "true" to the 1978 conviction in 1981, he forfeited any opportunity to collaterally attack the 1978 conviction. *See Ellis, supra.* Petitioner's 1981 counsel was not ineffective for failing to challenge the 1978 sentence absent some contemporaneous indication from petitioner that the backdated final conviction breached an earlier plea bargain or was otherwise inaccurate.

### *Recommendation*

The petition for writ of habeas corpus should be denied.

### *Objections*

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained within this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–277 (5th Cir.1988).

Signed this 28 day of March, 1995.

---

**10.** The agreed punishment recommendation of April 19, 1979, signed by Feist, his counsel, and counsel for the state, recommended that the

"prosecution proceed only on the Lesser Included Offense of Robbery and ... Defendant to have shock probation hearing within 120 days...."